520 A.2d 900

John E. Wertman, Jr., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondents.

Submitted on briefs November 17, 1986, to Judges MACPHAIL, DOYLE and COLINS, sitting as a panel of three.

*Lenore M. Urbano,* for petitioner.

*Warren R. Baldys,* for intervenor, Axeman-Anderson.

OPINION BY JUDGE MACPHAIL, January 29, 1987:

John E. Wertman, Jr. (Petitioner) appeals from a decision of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision denying benefits. We affirm.

The Board's findings of fact, which are supported by substantial evidence, are as follows:

1. The claimant was last employed by Axeman & Anderson as an assemblyman and welder for nine and one half years at $9.50 per hour and his last day of work was March 2, 1984.

2. The claimant pled guilty and was convicted of recklessly endangering other persons and aggravated assault.

3. The claimant is a Vietnam veteran, and allegedly suffers from Post Traumatic Stress Disorder.

4. Claimant contends that his psychiatric disorder was responsible for his criminal acts.

5. On March 6, 1984, the claimant was sentenced to eleven and one half to twenty-three months in the Lycoming County Prison.

6. As part of the terms of the claimant's sentence, the Court required that the defendant

serve at least one month in prison before he would be eligible for work release or psychiatric treatment.

7.   The employer was aware that the claimant was to be sentenced and agreed to keep a job for him if he was eligible for work release.

8.   The employer used the claimant's vacation days for the first few days in which he was absent.

9.   After the claimant's vacation days had all been used up, the employer counted the claimant's absence while he was in prison as unexcused absences.

10.   On March 26, 1984 the employer discharged the claimant for excessive absenteeism.

The referee and Board both concluded that Petitioner must be denied benefits because his discharge from work was the result of his "willful misconduct" under Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

We must affirm the Board's decision unless we find that it is in violation of the constitutional rights of Petitioner, that it is not in accordance with law or that any finding of fact made by the Board and necessary to support its adjudication is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

It is clear that a deliberate violation of an employer's rules is "willful misconduct," *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). Petitioner's first argument is that he cannot be found guilty of violating his employer's attendance rules because the employer did not follow its own rules in discharging him. Petitioner cites several cases in sup-

port of this proposition: *Schlappich v. Unemployment Compensation Board of Review,* 86 Pa. Commonwealth Ct. 472, 485 A.2d 855 (1984); *Cipriani v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 34, 466 A.2d 1102 (1983); *Unemployment Compensation Board of Review v. Schmid,* 20 Pa. Commonwealth Ct. 286, 341 A.2d 553 (1975). Although the Board made no explicit finding that the employer followed its own rules in discharging Petitioner, there is ample evidence in the record to indicate that such was the fact; accordingly, the cases cited by the Petitioner are inapplicable.

Petitioner was sentenced on March 5, 1984 to 11½ to 23 months with eligibility for hospitalization at a Veteran's Hospital and work release following a one-month period of incarceration. After Petitioner's sentence, the employer began to apply Petitioner's vacation time to the days he was absent from work. On March 19, 1984, the employer wrote to Petitioner to tell him that as of the following day, Petitioner's vacation days having been used up, the absentee policy would go into effect.

It is undisputed that the employer's absentee policy is as follows:

*Unexcused Absence Penalties*

1. One unexcused absence—Verbal warning.
2. Two unexcused absences—Written warning.
3. Three unexcused absences—One day off without pay.
4. Four unexcused absences—Three days off without pay.
5. Five unexcused absences—Immediate discharge.

The employer sent the first warning notice to Petitioner's home address on March 20, 1984. The employer obviously could not give Petitioner a verbal warning because Petitioner was incarcerated. The em-

ployer then sent notices to Petitioner's home on March 21, 1984, March 22, 1984, and March 23, 1984. The employer sent a termination notice on March 26, 1984. Petitioner avers that he should have been afforded a one-day suspension without pay after his third unexcused absence and a three-day suspension after his fourth unexcused absence. Following this line of reasoning, Petitioner should not have been discharged until March 30, 1984.

First, we would note that the employer was not in a position to offer suspensions to Petitioner because Petitioner was not available for work in the first place, so he could hardly be suspended.

Second, it is clear that even if the employer had made an allowance of four days for the suspensions, Petitioner was still unavailable for work on March 30, 1984 because he was still in jail and not yet available for work release. The employer would still have been entitled to discharge Petitioner.

The instant case can be distinguished from a factually similar case that Petitioner cites, *Morris v. Unemployment Compensation Board of Review,* 203 Pa. Superior Ct. 122, 198 A.2d 629 (1964). In *Morris,* the claimant was absent for two days from work without notifying his employer. The employer dismissed him in spite of a company rule which provided for dismissal after three days absence without notice. The Superior Court held that the claimant was not guilty of willful misconduct because at the time of his dismissal he had not yet broken a rule of employment. Evidently the claimant in *Morris* testified that he had not planned to return to work in any event. Nevertheless, there is still a critical difference between *Morris* and the case at bar. In *Morris* the claimant was available for work and could go back to work if he wanted, in the case at bar Petitioner would have been incapable of returning to work.

The extra days of suspension would have been of no avail to him. Petitioner does argue that he may have been able to move his release to the hospital up a few days if the employer had given him the suspension days before firing him. At this stage, however, that is mere speculation.

Petitioner next argues that because his incarceration was for acts not connected in any way with his work he cannot be found guilty of willful misconduct. Petitioner has misapprehended the caselaw.

It is true that Petitioner's conviction standing alone could not have formed the basis for denying him benefits if it did not reflect on his fitness to do his job. *See Dunbar v. Unemployment Compensation Review Board,* 82 Pa. Commonwealth Ct. 575, 475 A.2d 1355 (1984). However, Petitioner was denied benefits as a result of breaking his employer's attendance rules. Incarceration does not suspend an employee's obligation to be available for work. *Masko v. Unemployment Compensation Board of Review,* 67 Pa. Commonwealth Ct. 296, 447 A.2d 328 (1982). Further, this Court decided in *Medina v. Unemployment Compensation Board of Review,* 55 Pa. Commonwealth Ct. 323, 423 A.2d 469 (1980) that excessive absences caused by incarceration could support a finding of willful misconduct.

Petitioner's efforts to bring this case under the ruling of *Hawkins v. Unemployment Compensation Board of Review,* 81 Pa. Commonwealth Ct. 114, 472 A.2d 1191 (1984) are unavailing. In *Hawkins,* under a factual scenario very similar to the case at bar, this Court reversed a denial of benefits. There was a crucial difference in the facts of *Hawkins,* however, in that the claimant was in jail not as the result of a conviction but rather because he was unable to raise bail money. In *Hawkins* we were careful to distinguish the ruling therein from our ruling in *Medina* on that very basis. In *Hawkins* it

was not clear if Claimant's absence was due to *willful* misconduct because he had not yet been convicted of a crime. In *Medina* there was a conviction, therefore there could be a finding made that the incarceration grew out of willful acts on the part of the claimant.

Petitioner argues further that the employer was unjustified in discharging him because an attempt was made to preserve the employer-employee relationship in that Petitioner's brother requested, before Petitioner was discharged, that he be granted an "extended vacation." However, the testimony presented by the employer made clear that the employer's rules provided that the company had the exclusive right to approve or disapprove a request for an extended vacation.[1]

Petitioner argues further that he cannot be said to be guilty of willful misconduct because the employer sent the warning notices concerning his unexcused absences to Petitioner's home, not to the jail. It is undisputed, however, that Petitioner's wife received the notices. It is also undisputed that Petitioner's wife and brother decided to withhold the notices from Petitioner because of his agitated mental state. Petitioner's brother did attempt to preserve the employment of Petitioner by going to the employer and requesting that the employer grant Petitioner an extended vacation. Under the circumstances, the fact that the notices were sent to Petitioner's residence satisfied the Employer's obligation. There was simply nothing more Petitioner could have done to preserve his employment if he had personally received the notices.

Finally, Petitioner avers that he cannot be found guilty of "willful misconduct" because his alleged mental condition was responsible for his actions leading to his arrest. The Board held that Petitioner's mental disorders

---

[1] Notes of Testimony from April 23, 1985 at 34.

should not be considered as justification because "[t]hey were already litigated before the criminal court, where the claimant pled guilty." The issue we must resolve is whether the Board must make an independent determination of whether the Claimant's mental condition would constitute good cause for his absenteeism, notwithstanding his voluntary plea of guilty to a criminal charge. We hold that such a determination would be inappropriate. Pa. R. Crim. P. 149(b) makes it clear that a Court must make a determination that a guilty plea is "voluntarily and understandingly tendered." The acceptance of the plea by the Court includes, therefore, a finding that the guilty plea was voluntarily and knowingly made. In the instant case, it is clear that Petitioner's absence from work was a direct result of his guilty plea. As such, it was his voluntary action of pleading guilty which caused him to break his employer's attendance rules. Petitioner's absences beyond the limits of those rules must, therefore, be considered "willful misconduct." It was unnecessary, therefore, for the Board to determine whether Petitioner's mental disorders caused him to commit the acts for which he was convicted.

Order affirmed.

## ORDER

The order of the Unemployment Compensation Board of Review denying benefits to John E. Wertman, Jr. is affirmed.