POPE & TALBOT, INC., Petitioner,

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.
(Two Cases.)

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1996.
Decided Dec. 17, 1996.

Richard M. Goldberg, Wilkes–Barre, for petitioner.

Quintes D. Taglioli, Allentown, for intervenors.

Before SMITH and FLAHERTY, JJ., and NARICK, Senior Judge.

FLAHERTY, Judge.

Pope and Talbot, Inc. (Employer) petitions for review from orders of the Unemployment Compensation Board of Review (Board) which affirmed the decisions of a referee finding that Alan Haas and John Garrison, representative claimants (Claimants), are eligible for benefits pursuant to Section 402(d) of the Unemployment Compensation Law (Law),[1] as Claimants met their burden of

proving that the work stoppage was the result of a lockout. Claimants are represented by Local 1448 of the United Paperworkers International Union (Union).

The issues in this case are whether the work stoppage was a lockout within the meaning of Section 402(d) of the Law, whether the Board erred in failing to find that an impasse had been reached or that it was futile for Employer to offer to continue the status quo, and whether the Board erred in precluding Employer from presenting evidence concerning the conduct of negotiations, including the 7–½ months of activity which took place from the expiration date of the collective bargaining agreement until the work stoppage.

The Union and Employer were parties to a collective bargaining agreement which commenced September 30, 1991, and remained in effect until September 16, 1994, and then year-to-year thereafter unless either party gave written notice to the other of its intention to terminate the agreement in not less than ten days. (R.R. 9a.) The parties commenced collective bargaining negotiations on August 31, 1994. (R.R. 67a.) From September 16, 1994, until the last day of work, Claimants continued to work under the terms and conditions of the expired contract.

On March 23, 1995, Employer presented its final proposal to the Union, which Union did not accept. The parties thereafter held negotiation sessions on March 25, 27, and 29, 1995. In a letter dated April 14, 1995, Employer notified Union that it believed the parties were at an impasse and, therefore, it intended to implement its final proposal effective April 29, 1995.

The Union notified Employer in a letter dated April 21, 1995, that it did not believe that the parties were at an impasse and offered to continue working under the same terms and conditions of employment of the expired contract, pending the outcome of continued negotiations.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(d). Section 402(d) of the Law provides in pertinent part:
    An employee shall be ineligible for compensation any week
        . . . .

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

Thereafter, the parties met again on April 27, 1995. At the conclusion of the meeting, a Union representative delivered a written letter to Employer offering to continue working under the terms and conditions of the expired agreement, pending negotiations to reach a new agreement. Employer responded that work was available under the implemented terms and conditions of the new agreement, but that the old agreement was terminated and there was no further work available under it. Claimants continued working until midnight, April 29, 1995, at which time the work stoppage commenced.

Claimants applied for unemployment benefits, which were granted by a referee. The referee determined that the work stoppage was caused by a lockout thereby entitling Claimants to benefits. On appeal, the Board affirmed the decision of the referee without comment. This appeal followed.

The court's scope of review is limited to determining whether the findings of fact are supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Wertman v. Unemployment Compensation Board of Review*, 103 Pa.Cmwlth. 376, 520 A.2d 900 (1987). The question of whether a work stoppage was caused by management or the union for purposes of unemployment benefits is a mixed question of law and fact. *Textron Lycoming v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 193, 604 A.2d 1216, 1219 n. 2 (1992).

The Supreme Court has developed the following test to determine whether a work stoppage is a lockout or a strike:

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout'....

*Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review (Appeal of Vrotney)*, 400 Pa. 440, 444–45, 163 A.2d 91, 93–94 (1960). Employer argues that, by maintaining the status quo for 7–1/2 months while negotiations continued, it has satisfied *Vrotney* by permitting work to continue for a *reasonable* amount of time under the pre-existing contract. As stated by the Supreme Court in *Local 730, United Association of Journeymen & Apprentices of Plumbing & Pipe–Fitting Indus. v. Unemployment Compensation Board of Review*, 505 Pa. 480, 489 n. 5, 480 A.2d 1000, 1005, n. 5 (1984):

Vrotney by its express language qualified the length of time during which this status quo must be maintained by stating: 'has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment....' *Vrotney Unemployment Case*, 400 Pa. 440, 444, 163 A.2d 91, 93 (1960). *Where it is evident that an impasse has been reached or good faith bargaining is impossible, Vrotney by its own terms is inapplicable.* (Emphasis added.)

After maintaining the status quo for 7–1/2 months, Employer maintains that the parties reached an impasse. In a letter dated April 14, 1995, Employer expressed its belief that "the parties are now clearly at an impasse...." (R.R. 82a.) Union responded on April 21, 1995, that it "[did] not believe that the parties [were] at impasse." (R.R. 83a.) However, whether an impasse in fact occurred cannot be determined from the record as the referee refused Employer's request to produce "any evidence that would show the basis upon which the Employer made its decision to change the status quo." (R.R. 73a.) As stated by this court in *Textron Lycoming*, "any application of an impasse defense is very fact sensitive." *Id.*, 604 A.2d at 1220. In *Norwin School District v. Unemployment Compensation Board of Review*, 510 Pa. 255, 507 A.2d 373 (1986), the Court addressed the concept of impasse during the bargaining process. In that case, the court defined impasse as the point at which the parties have exhausted their prospects of reaching an agreement and further negotiations would be fruitless. *Id.* at 267 n. 9, 507 A.2d at 380 n. 9.

Here, absent facts concerning the issues between the parties, we are unable to determine whether the parties were deadlocked in negotiations or whether an impasse occurred. Although Union maintains that at all times it agreed to work under the terms of the old contract, and thus no impasse occurred, as previously stated, Employer is not required to maintain the status quo indefinitely. There is nothing in the record indicating upon what terms and conditions the parties disagreed. Although this court is loathe to find that an impasse has occurred, *see Grinnell Corp. v. Unemployment Compensation Board of Review,* 127 Pa.Cmwlth. 298, 561 A.2d 843(1989), *appeal denied,* 525 Pa. 613, 577 A.2d 545 (1990), a party must be given the opportunity to present evidence in its favor. Here, Employer was specifically precluded from producing evidence concerning whether an impasse had been reached or whether good faith bargaining was impossible. (R.R. 71a.) Having maintained the status quo for a period of 7-1/2 months, Employer in this case is entitled to a remand so that it may introduce evidence [2] on the issues whether of whether or not Employer conducted negotiations for a reasonable amount of time to avert a work stoppage and whether an impasse resulted under the circumstances.[3]

Employer also maintains that to continue to offer to maintain the status quo was futile and that it was prohibited from introducing evidence as to the futility doctrine. Under the futility doctrine a *union* may be excused from its burden of offering to continue working under the terms of the expired agreement where it is apparent that such an offer would be rejected by management. *Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968). The futility doctrine is inapplicable to Employer, however, as that doctrine applies to unions. Moreover, it would not have been futile for Employer to ask Claimants to maintain the status quo as Claimants had already announced their willingness to do so.

Accordingly, the orders of the Board are vacated and the cases are remanded for the taking of additional evidence consistent with this opinion.

### ORDER

NOW, December 17, 1996, the orders of the Unemployment Compensation Board of Review, at No. B-341967 and No. B-341968, dated October 16, 1995, are vacated and the cases are remanded for the taking of additional evidence.

Jurisdiction relinquished.

---

**2.** Unlike *Grinnell,* where this court determined that the Board did not err in excluding Employer's proffered evidence concerning impasse and financial necessity, Employer was not given the opportunity to make an offer of proof relative to evidence it sought to introduce.

