IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Darrell J. Miller, | : |
|            Petitioner | : |
| | :   No. 2282 C.D. 2014 |
|         v. | : |
| | :   Submitted: June 12, 2015 |
| Unemployment Compensation | : |
| Board of Review, | : |
|            Respondent | : |


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH[1]                       FILED: October 9, 2015


      Darrell J. Miller (Claimant) petitions for review of the November 25, 2014 order of the Unemployment Compensation Board of Review (Board), affirming a referee's determination that he is ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law).[2] We vacate and remand.

      Claimant was employed by Wayne Mills Company (Employer) as a laborer from October 1, 2008, until July 8, 2014. On the latter date, Employer sent

---

[1] This opinion was reassigned to the author on August 6, 2015.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. 43 P.S. §802(e).

Claimant a letter notifying him that Employer was terminating his employment for being absent for two weeks without leave. Employer stated that it was informed that Claimant was incarcerated and that it was necessary to fill the position with another person. (Finding of Fact No. 1; Record Item No. 3.)

Claimant filed an application for unemployment benefits. In his questionnaire dated July 16, 2014, Claimant stated that he was incarcerated from June 20, 2014, to July 14, 2014, noting that his incarceration was not the result of a conviction. In listing the reasons for his incarceration, Claimant wrote: "I wasn't supposed to be on Facebook and my probation officer found my page which I never got around to deleting. . . ." (Record Item 2.) The local service center determined that Claimant was ineligible for benefits under section 402(e) of the Law. Claimant appealed, and the referee convened a hearing on September 12, 2014.

Daniel Brasch, Employer's department manager, testified that Mrs. Miller, Claimant's wife, called him on June 19, 2014, and informed him that Claimant was incarcerated for a violation of probation. Brasch stated that "within a couple of days" he had another conversation with Mrs. Miller and told her that Claimant was being terminated, but would be paid two weeks of annual bonus pay. Brasch said that he told Mrs. Miller that Employer was not willing to keep Claimant's position open because it was "important" and "had to be filled right away." (Notes of Testimony (N.T.) at 4-6).

Claimant testified that he was incarcerated from June 19, 2014, to July 14, 2014, for allegedly violating the terms of his probation. Claimant said that he was arrested and incarcerated for having a Facebook page. The following exchange then occurred between the referee and Claimant:

[Referee]: Now was there a disposition regarding whether or not you had violated your probation? Was it determined that you had or that you had not, or is that still pending?

[Claimant]: **No. It was determined that I, that I hadn't. They – I had my lawyer represent me and my probation was reinstated to continue where it left off.**

(N.T. at 7) (emphasis supplied).

On cross-examination, Employer inquired as follows:

[Employer]: So the three weeks that you served, was that for violating your probation?

[Claimant]: Well yeah, according to my PO [probation officer]. He thought it was a violation, and I was detained.

[Employer]: And did you have a Facebook account?

[Claimant]: Yes I did.

[Employer]: Okay. And per your probation you're not allowed to have a Facebook or any social media, correct?

[Claimant]: Correct.

(N.T. at 7.)

Mrs. Miller testified that she called Brasch on June 19, 2014, and informed him that Claimant was incarcerated and that his court hearing was scheduled to occur on July 8, 2014. Mrs. Miller said that Brasch told her that he was going to try to maintain Claimant's position for him. Mrs. Miller stated that she called Brasch again on July 7, 2014, and told him that she had just learned that the hearing was rescheduled to July 14, 2014, and that Claimant would remain incarcerated during this time. She said she did not know that Employer was going to

3

terminate Claimant until she received the July 8, 2014 letter in the mail. (N.T. at 7-9.)

In a decision dated September 16, 2014, the referee made the following findings of fact:

> 1. [Claimant] worked for [Employer] as a laborer from October 1, 2008, through June 19, 2014 at a final pay rate of $13.35 per hour.
>
> 2. [Claimant] was on probation, and pursuant to his probation, [Claimant] could not have any social media accounts.
>
> 3. [Claimant] had an active Facebook account and was interned [*i.e.*, incarcerated] for violating his probation from June 19, 2014, through July 14, 2014.
>
> 4. [Employer] discharged [Claimant] for absenteeism.

(Findings of Fact Nos. 1-4.)

Based upon these findings, the referee determined that Claimant engaged in willful misconduct. More specifically, the referee concluded: "[C]laimant was liable for the underlying offense of having an active Facebook account in violation of his probation." (Referee's decision at 2.)[3]

---

[3] The referee also referenced section 402.6 of the Law, 43 P.S. §802.6, added by the Act of October 30, 1996, P.L. 738, which states that a person will be ineligible for benefits "for any weeks of unemployment during which the employe is incarcerated after a conviction." *Id.* However, the referee found that this provision had limited applicability, and only disqualified Claimant for two days of benefits, because Claimant did not file his application until after he was released from prison. (Referee's decision at 2.)

4

Claimant appealed to the Board. By order dated November 25, 2014, the Board affirmed the referee's decision, adopting and incorporating the referee's findings and conclusions.

On appeal to this Court,[4] Claimant argues that the Board erred in concluding that he committed willful misconduct. Claimant contends that, through his wife, he gave immediate and continued notice to Employer that he would be absent from work due to incarceration. Claimant further asserts that he had just cause for his absences because the criminal trial court found that he did not violate his probation. Finally, Claimant argues that the Board erred in contravening the criminal trial court's disposition and making an independent determination that he violated his probation.

Section 402(e) of the Law states that an employee will be ineligible for unemployment compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. §802(e).[5] The employer bears the burden of proving that the employee was dismissed for willful misconduct, and the issue of whether an employee's conduct has risen to the level of willful misconduct is a question of law

---

[4] Our scope of review is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. *Shrum v. Unemployment Compensation Board of Review*, 690 A.2d 796, 799 n.3 (Pa. Cmwlth. 1997).

[5] Although the Law does not specifically define "willful misconduct," this Court has defined it by saying the behavior "must evidence (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations." *Kentucky Fried Chicken, Inc. v. Unemployment Compensation Board of Review*, 309 A.2d 165, 168-69 (Pa. Cmwlth. 1973).

5

fully reviewable by this Court. *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054, 1056-57 (Pa. Cmwlth. 2004).

"Absenteeism alone, while grounds for discharge, is not a sufficient basis for denial of unemployment benefits. An additional element, such as lack of good cause for absence, is necessary." *Runkle v. Unemployment Compensation Board of Review*, 521 A.2d 530, 531 (Pa. Cmwlth. 1987). Factors that are considered in determining whether absenteeism constitutes willful misconduct are: (1) excessive absences; (2) failure to notify the employer in advance of the absence; (3) lack of good or adequate cause for the absence; (4) disobedience of existing company rules, regulations, or policies with regard to absenteeism; and (5) disregard of warnings regarding absenteeism. *Petty v. Unemployment Compensation Board of Review*, 325 A.2d 642, 643 (Pa. Cmwlth. 1974).

Here, the record demonstrates that the fourth and fifth factors are not applicable, and there is no dispute that Claimant, through his wife, properly notified Employer that he would be absent (the second factor). *See Hawkins v. Unemployment Compensation Board of Review,* 472 A.2d 1191, 1192 (Pa. Cmwlth. 1984). The predominate issue in this case, therefore, is whether Claimant had good cause for the absences so as to preclude or negate a finding of willful misconduct. *See Medina v. Unemployment Compensation Board of Review*, 423 A.2d 469, 471 (Pa. Cmwlth. 1980). The concept of "good cause" has been characterized as an action of the employee that is justifiable or reasonable under all the circumstances. *Id.* (citation omitted).

"Absence from work due to pre-trial incarceration is not, itself, willful misconduct." *Bruce v. Unemployment Compensation Board of Review*, 2 A.3d 667, 671 (Pa. Cmwlth. 2010) (citing *Hawkins,* 472 A.2d at 1192). In *Hawkins*, the

6

claimant was incarcerated for two months after his arrest for an incident unrelated to his employment; he was never convicted of a crime. Upon his release on bond from prison, the claimant was informed that his employment had been terminated for violating the employer's attendance policy. In reversing the Board's denial of benefits under section 402(e), this Court reasoned:

> [W]e find nothing in the record to indicate that the claimant had the ability to effect his own release from jail prior to the date that he satisfied his bond. **Nor do we find any basis for concluding that disqualifying misconduct should be inferred from the mere fact of the claimant's incarceration. The claimant was not incarcerated due to a conviction for criminal activity; he was incarcerated subsequent to arrest pending trial or his posting of bail.** This case is, thus, distinguishable from [*Medina*], where the claimant was convicted for assault and sentenced to six months in prison. . . .
>
> While we have no qualms with the employer's right to enforce minimum attendance standards, we find no basis for holding that the claimant's breach of those standards was willful or wanton.

*Hawkins*, 472 A.2d at 1192-93 (emphasis supplied).

In *Wertman v. Unemployment Compensation Board of Review*, 520 A.2d 900 (Pa. Cmwlth. 1987), the claimant pleaded guilty to reckless endangerment and aggravated assault, and the trial court sentenced him to eleven and one half to twenty-three months' imprisonment. In discussing the interplay between *Hawkins* and *Medina*, we stated: "In *Hawkins* it was not clear if [the claimant's] absence was due to *willful* misconduct because he had not yet been convicted of a crime. In *Medina* there was a conviction, therefore there could be a finding made that the incarceration grew out of willful acts on the part of the claimant." *Wertman*, 520 A.2d at 903 (emphasis in original). Because the evidence established that the claimant in

7

*Wertman* had been convicted of the underlying offenses, this Court concluded that the claimant's incarceration and attendant absences constituted willful misconduct.

In *Bruce*, the claimant was arrested and charged with drug possessory offenses. The claimant subsequently entered into an Accelerated Rehabilitative Disposition Program (ARD) and was ordered to pay a fine, serve twelve months' probation, and perform sixteen hours of community service.

Initially, this Court concluded that the claimant committed willful misconduct because she failed to properly notify the employer that she was incarcerated and would be absent from work. We rejected the claimant's argument that her incarceration provided her with good cause for her absence and failure to call off. In doing so, this Court in *Bruce* noted the Board's concession that had the claimant been acquitted of the charges, she would have been incarcerated through no fault of her own and would have been entitled to benefits. Applying this standard, we approved the Board's analysis in the following regard:

> The Board found that [the claimant] was not acquitted of the charges but, rather, that she entered into the ARD program. As such, [the claimant] failed to show that her arrest and subsequent incarceration, which kept her from reporting to work or personally calling off, were through no fault of her own. We find no error in the Board's decision . . . that [the claimant] violated Section 402(e) of the Law.

2 A.3d at 676. Further noting that the charges against the claimant were not withdrawn and were officially disposed of for purposes of criminal law, we ultimately concluded that the claimant's acceptance into the ARD program was insufficient to establish "that her pre-trial incarceration was unjustified." *Id.* at 677.

Pursuant to *Hawkins, Wertman*, and *Bruce*, the dispositive issue in this case is whether Claimant violated his probation. Claimant testified that the criminal trial court presiding over the matter found that he did not, (N.T. at 7), and this Court

8

takes judicial notice of Claimant's criminal docket at CP-51-CR-0000635-2014. *See Lycoming County v. Pennsylvania Labor Relations Board*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007) ("It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate."). The docket entries establish that on July 14, 2014, the trial court adjudicated Claimant's probation revocation hearing and found that Claimant's "probation is to continue." (Docket Entry #3, page 8.)[6] However, the docket entries are vague and do not demonstrate conclusively that Claimant was found not to have violated the terms of his probation.

Here, the Board disregarded Claimant's testimony, determined for itself that Claimant violated probation, and, in doing so, overlooked the critical fact that a criminal trial court had already ruled on the probation case. Notably, the Board did not make any specific credibility determination with respect to Claimant's testimony that the criminal trial court found that he did not violate the terms of his probation.[7] Where the Board fails to make necessary findings and credibility determinations, we must remand to the Board. *See Stankiewicz v. Unemployment Compensation Board of Review*, 529 A.2d 614, 616 (Pa. Cmwlth. 1987); *Harris v. Unemployment Compensation Board of Review*, 473 A.2d 251, 252 (Pa. Cmwlth. 1984). This is especially true where the evidence, if credited, would change the outcome of the case.

---

[6] The entry states: "Defendant's probation is to continue. Defendant to remain in compliance with all standard and special conditions of . . . probation. Fines and costs to remain. Detainer lifted." (Docket Entry #3, page 8.)

[7] Our scope of review precludes this Court from making factual findings and credibility determinations, and we will not infer credibility determinations from the decision of the fact-finder against the party with the burden of proof. *Feinsod v. Unemployment Compensation Board of Review*, 624 A.2d 762, 765 n.6 (Pa. Cmwlth. 1993); *Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 845 (Pa. Cmwlth. 1987).

*See Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 844-45 (Pa. Cmwlth. 1987).

If the Board accepts Claimant's testimony as credible, the principles underscoring collateral estoppel would apply, and the criminal trial court's determination would be entitled to preclusive effect, thereby barring a subsequent challenge or ruling by either Employer or the Board. In general, the doctrine of collateral estoppel, often referred to as issue preclusion, "is designed to prevent relitigation of questions of law or issues of fact that have already been litigated in a court of competent jurisdiction." *Department of Corrections v. Workers' Compensation Appeal Board (Wagner-Stover)*, 6 A.3d 603, 608 (Pa. Cmwlth. 2010) (*en banc*).[8] Moreover, if the Board accepts Claimant's testimony as credible, Claimant would establish that he had just cause for his absences and that they were excusable and reasonable under the circumstances. Indeed, in *Bruce*, we noted that if there were evidence that the claimant had been acquitted of criminal charges, the claimant's incarceration and absences would have resulted through no fault of her own, and benefits could not be denied on the grounds that the claimant engaged in willful misconduct. 2 A.3d at 676.[9] For these reasons, we must remand to the Board

---

[8] In any event, since it is through the machinery of the criminal justice system that an individual is incarcerated for a crime, a criminal trial court's determination that an individual is not guilty of that crime must take precedence over any ensuing, contrary determination by the Board. *See Sparks v. Department of Employment & Training Services*, 531 N.E.2d 227, 228-29 & n.1 (Ind. Ct. App. 1988) (concluding that court's disposition of criminal charges takes precedence over unemployment board's finding that the claimant was guilty of those charges based upon the claimant's perceived "admission" or "confession" at the unemployment hearing).

[9] This Court has often stated that "there is a critical distinction between the employer's right to terminate employment and the state's right to deny unemployment benefits." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1103 (Pa. Cmwlth. 2013) (citation omitted). To be sure, "the question of justifiable termination and eligibility for unemployment **(Footnote continued on next page…)**

to make an express credibility determination and attendant finding(s) regarding Claimant's testimony that the criminal trial court found that he did not violate probation.

The Board argues that "the outcome of the [criminal] court proceedings is irrelevant," (Board's brief at 8), and cites *Bruce* for support. However, *Bruce* is readily distinguishable and, as explained above, actually supports Claimant's position. More particularly, the claimant in *Bruce* was charged with drug possessory offenses and she entered into the ARD program. This Court was careful to point out that the claimant was not exonerated of the charges, nor were the charges dropped, and we concluded that "because she entered into the ARD program, [the claimant] has done nothing to prove that she was incarcerated through no fault of her own." 2 A.3d at 676-77. By way of contrast, in this case there is evidence in the record that Claimant was adjudicated not guilty of a parole violation. Significantly, unlike in *Bruce*, Claimant's wife repeatedly informed Employer of Claimant's incarceration and hearing date. Therefore, the Board's reliance on *Bruce* is misplaced.

Accordingly, we vacate the Board's order and remand for the Board to determine the credibility of Claimant's testimony that the criminal trial court found that he did not violate his probation and for additional finding(s) based upon that credibility determination. Because the outcome of the criminal trial court case is absolutely vital to determining whether Claimant violated his probation, on remand, the Board, on its own or on further remand to a referee, shall provide Claimant with

---

**(continued…)**

benefits are two different things; an employee may be fired for completely proper reasons, yet remain eligible for benefits." *Id.* at 1101 (citation omitted). .

11

the opportunity to submit court documentation – *e.g.*, a court order, a hearing transcript, etc. – to prove that the trial court found that he did not violate probation. *See* section 706 of the Judicial Code, 42 Pa.C.S. §706; *Dillinger v. Workers' Compensation Appeal Board (Port Authority of Allegheny County)*, 40 A.3d 748, 754-55 (Pa. Cmwlth. 2012). The Board shall then issue a new decision that accounts for its credibility determination and additional finding(s) of fact.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darrell J. Miller,                          :
               Petitioner           :
                                :      No. 2282 C.D. 2014
               v.                    :
                                :
Unemployment Compensation    :
Board of Review,                            :
               Respondent           :

## ***ORDER***

AND NOW, this 9th day of October, 2015, the November 25, 2014 order of the Unemployment Compensation Board of Review (Board) is vacated and the case is remanded for the Board to determine the credibility of Darrell J. Miller's (Claimant) testimony that the criminal trial court found that he did not violate his probation and for additional finding(s) based upon that credibility determination. On remand, the Board, on its own or on further remand to a referee, shall provide Claimant with the opportunity to submit court documentation to prove that the trial court found that he did not violate his probation. The Board shall then issue a new decision that accounts for its credibility determination and additional finding(s) of fact.

          Jurisdiction relinquished.

 

                                           _____
                                           PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darrell J. Miller,                                    :
                          Petitioner              :
                                                       :
            v.                                         :        No. 2282 C.D. 2014
                                                       :        SUBMITTED:  June 12, 2015
Unemployment Compensation               :
Board of Review,                                   :
                          Respondent             :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                    HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION NOT REPORTED**

**CONCURRING OPINION BY**
**JUDGE LEADBETTER**                              **FILED:  October 9, 2015**


            I concur in the decision of the majority to remand for a clarification of findings. I write separately to note my belief that we could affirm the Board's order based upon Miller's admission that he did that which was prohibited by a term of his probation. However, since Miller stated that "it was determined that [I] hadn't [violated my probation]… I had my lawyer represent me and my probation was reinstated…." I agree that it is prudent to allow the Board to determine whether his characterization of the court's ruling is inconsistent with his statement that he had a Facebook account even though "per his probation" he was not allowed to have one and, if so, which statement to credit.


_____
**BONNIE BRIGANCE LEADBETTER,**
Judge