IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Allen,                                     :
                                                :
                        Petitioner              :
                                                :
            v.                                   : No. 214 M.D. 2021
                                                : Submitted: February 4, 2022
Derek F. Oberlander,                            :
Superintendent, SCI-Forest,                     :
and the Pennsylvania Board                      :
of Probation and Parole,                        :
                                                :
                        Respondents             :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                 FILED: August 30, 2022


            Before the Court are preliminary objections filed by Derek F.

Oberlander, Superintendent of the State Correctional Institution (SCI)-Forest

(Superintendent) and the Pennsylvania Board of Probation and Parole (Board),[1]

(together, Respondents), to John Allen's (Inmate) *pro se* petition for review in the

---

[1] The Pennsylvania Board of Probation and Parole was renamed the Pennsylvania Parole Board before this action commenced on July 1, 2021. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code (Parole Code), *as amended*, 61 Pa. C.S. §§6101, 6111(a).

nature of a complaint in mandamus.[2]  In his petition, Inmate avers that Respondents worked in concert to deny Inmate's parole, denied him credit for time served, and failed to credit him with time spent at liberty on parole in violation of his rights under the United States (U.S.) and Pennsylvania Constitutions.  Inmate claims that Respondents arbitrarily and capriciously denied him parole on four consecutive occasions in violation of his procedural and substantive due process rights under the Fourteenth Amendment to the U.S. Constitution,[3] and in violation of his right not to incriminate himself under the Fifth Amendment to the U.S. Constitution.[4]  *See* Petition at 4-6.  Inmate also claims that Respondents failed to award him credit for time served and failed to award him credit for time spent at liberty on parole in violation of the *ex post facto* clauses in the U.S. and Pennsylvania Constitutions.[5] *See* Petition at 4, 9.  Respondents filed preliminary objections in the nature of a demurrer to inmate's petition, and raised the defense of *lis pendens*.  After careful review, we sustain Respondents' demurrer, dismiss as moot their defense of *lis pendens*, and dismiss Inmate's petition.

---

[2] By Orders dated July 15, 2021, and August 18, 2021, this Court determined that Inmate's petition shall be treated as a petition for review addressed to our original jurisdiction.  By Order dated August 31, 2021, this Court granted Inmate's motion to treat his petition as timely and to accept payment of the filing fee as Inmate's compliance with our orders to do so.  Respondents do not argue that Inmate's petition was untimely.

[3] The Fourteenth Amendment provides, in relevant part:  "[N]or shall any State deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, §1.

[4] The Fifth Amendment provides, in relevant part:  "No person shall . . . be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. amend. V.

[5] Article I, Section 9  of the U.S. Constitution provides that "[n]o . . . *ex post facto* Law shall be passed."  U.S. Const. art. I, §9.  Article I, Section 17 of the Pennsylvania Constitution states that "[n]o *ex post facto* law . . . shall be passed."  Pa. Const. art. I, §17.

Inmate avers that Respondents denied him parole in a decision dated April 5, 2019, where, after an interview with Inmate and review of his file, Respondents denied parole for multiple reasons including the need to participate in and complete additional institutional programs, institutional behavior including misconducts, risk assessment indicating risk to the community, prior unsatisfactory parole supervision, the existence of state detainers, Inmate's "minimization/denial of the nature and circumstances of the offenses committed," and Inmate's "lack of remorse for the offense(s) committed." Petition, Exhibit A at 3-4.[6]

After interview and file review, Respondents denied Inmate's parole again in a decision dated January 22, 2020, for risk level to the community, prior unsatisfactory parole supervision history, and "other factors deemed pertinent in determining that [Inmate] should not be paroled: [Inmate's] version of events leading to [his] new conviction is not credible." Petition, Exhibit A at 5.

After interview and file review, Respondents again denied Inmate's parole in a decision dated April 29, 2021, for institutional behavior, including reported misconducts, prior unsatisfactory parole supervision history, risk level to the community, Inmate's "minimization/denial of the nature and circumstances of the offenses(s) committed," his "refusal to accept responsibility for the offense(s) committed," his "lack of remorse for the offense(s) committed," and other factors deemed pertinent regarding Inmate's "apparent failure to benefit from prior incarceration, programming[,] or community supervision." Petition, Exhibit A at 6. At the next review, the Board would consider whether Inmate maintained a favorable recommendation from the Department of Corrections, maintained a clean conduct record, had a detailed reentry plan including employment, and the Board

---

[6] For ease of reference, we insert page numbers in Inmate's Exhibit A, as it was not paginated.

recommended educational/vocational programming. *Id.* at 7. Therefore, the record reveals that Inmate was denied parole three times, and not four times, as Inmate alleged. *Id.* at 3-7.

As to the parole denials dated April 5, 2019, January 22, 2020, and April 29, 2021, Inmate avers that the Board's decisions violated his procedural due process rights under the Fourteenth Amendment, when Respondents "have the ultimate authority" over parole denials, and there is "no known review committee to vet their decisions." Petition at 2. Inmate claims Respondents abused their discretion when the parole denials are "based on facts not in evidence, and when [Inmate] was never charged with, nor convicted of[,] the reason they are now trying to employ" to deny Inmate's parole. *Id.* Inmate also avers that Respondents' parole denials violated his substantive due process rights under the Fourteenth Amendment when they denied Inmate's "meaningful access to parole" in an "arbitrary and capricious manner" in actions that are "conscience shocking," again, based on "facts not in evidence." *Id.* Inmate further avers that Respondents' parole denials violated his right to be free from self-incrimination under the Fifth Amendment, again, because Inmate claims that he "can[]not accept responsibility for an event that never occurred, nor can an admittance occur for a fact that does not exist." *Id.* at 6.

Inmate's claims that Respondents' parole denials violated his constitutional rights all hinge on Inmate's failure to admit that he was charged with or convicted of a weapons violation as part of his conviction for terroristic threats. *See* Petition at 3, 4, 5, and 6.

Also attached to Inmate's petition is the Board's decision with a mailing date of August 15, 2018, that recommitted Inmate as a convicted parole violator (CPV), to serve twelve months of backtime for his conviction for terroristic threats,

4

and denied Inmate credit for time spent at liberty on parole because his new conviction "involved possession of a weapon." Petition, Exhibit A at 1-2. As to Inmate's recommitment, Inmate does not contest the recommitment itself, but he avers that Respondents' failure to credit him with time spent at liberty on parole and to credit his time served to his original sentence violated the *ex post facto* clauses of the U.S. and Pennsylvania Constitutions, by punishing him for an offense he did not commit. *See* Petition at 4, 7, 8, and 9. Inmate's claims that Respondents' failure to properly grant him time credits in their recommitment decision also hinge on Inmate's failure to admit that he was charged with or convicted of a weapons violation, or that his "[n]ew [c]onviction [for terroristic threats] involved [p]ossession of a [w]eapon." *Id.* at 4, 5, and 9.

Respondents filed preliminary objections in the nature of a demurrer to Inmate's petition, arguing that Inmate failed to aver sufficient facts to support his claim that his constitutional rights were violated when he was denied parole three times, because Inmate does not have a liberty interest in receiving parole, citing in support *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766, 770 (Pa. Cmwlth. 1997). Respondents also demur to Inmate's claim that the Board's failure to properly award him time credit violated the *ex post facto* clauses of the U.S. and Pennsylvania Constitutions, arguing that Inmate failed to aver sufficient facts in support of this claim. Respondents also assert the defense of *lis pendens*, arguing that Inmate's averments that the Board failed to award him proper credit when it recommitted him should be dismissed because Inmate's appeal of the Board's August 15, 2018 decision was pending in a separate appeal before this

5

Court, docketed as *John Allen v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 573 C.D. 2020, filed February 15, 2022) (*Allen*).[7]

We first address Respondents' *lis pendens* claim, where Respondents argue that under Pa.R.Civ.P. 1028(a)(6), Inmate's petition should be dismissed based on the "pendency of a prior action" based on Inmate's then-pending appeal of his recommitment in *Allen*. To prevail on this claim, Respondents must show that, in each case, the same parties are involved, the same rights asserted, and the same relief sought. *Commonwealth ex rel. Lindsley v. Robinson*, 372 A.2d 1258, 1260 (Pa. Cmwlth. 1977).

In *Allen*, Inmate, represented by counsel, sought review of the Board's denial of his request for administrative review of its August 15, 2018 decision that recommitted Inmate to an SCI as a CPV, declined to award him credit for the time that he spent at liberty on parole because his new conviction involved the possession of a weapon, and applied the time he spent detained on the new charges to his new sentence and not to his original sentence. *Allen*, slip op. at 1. The relevant facts from *Allen* are as follows:

> On February 10, 2015, Parolee pleaded guilty, in the
> Luzerne County Court of Common Pleas, to two separate

---

[7] *See* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value."). It is appropriate for this Court to take judicial notice of documents that are filed and entered in our docket. *See, e.g.*, Pa.R.E. 201(b)(2) (permitting courts to take judicial notice of facts that may be "determined from sources whose accuracy cannot reasonably be questioned"); *Moss v. Pennsylvania Board of Probation and Parole*, 194 A.3d 1130, 1137 n.11 (Pa. Cmwlth. 2018) (taking judicial notice of docket entries that were not part of the original record); *Miller v. Unemployment Compensation Board of Review*, 131 A.3d 110, 115 (Pa. Cmwlth. 2015) (taking judicial notice of the entries on a claimant's criminal docket and the records contained therein). The Court's analysis and holding in *Allen* are undoubtedly persuasive here, where Inmate is attempting to challenge his recommitment through a mandamus action.

charges of drug possession with intent to manufacture, sell, or deliver, and received a total sentence of two to four years in an SCI. Certified Record (C.R.) at 1-2. At that time, his maximum sentence date was December 21, 2018. *Id.* at 2. On December 22, 2016, he was released on parole. C.R. at 7.

On August 26, 2017, a Police Criminal Complaint (Criminal Complaint) was filed in Carbon County, charging Parolee with aggravated assault, terroristic threats, simple assault (two counts), recklessly endangering another person, and harassment. C.R. at 11-14. The affidavit of probable cause alleged that on August 23, 2017, Parolee entered a residence, produced a firearm, and pointed it at the victim, stating that he was going to kill her. *Id.* at 16-17. The victim jumped from a second-story bathroom window to escape and suffered multiple injuries. A warrant was issued for Parolee's arrest on August 26, 2017. *Id.* at 38.

On August 29, 2017, Parolee was arrested by the Pennsylvania State Police (PSP) and incarcerated in the Carbon County Prison. C.R. at 22. Monetary bail was set at $100,000 on August 30, 2017, which Parolee did not post. *Id.* at 22, 65. Also on August 29, 2017, the Board issued a detainer warrant. *Id.* at 18. Parolee waived his right to counsel and a detainer hearing. *Id.* at 21. The Board issued a decision detaining Parolee pending disposition of the new criminal charges. *Id.* at 30.

On March 19, 2018, Parolee entered a guilty plea to the charge of terroristic threats as provided in Section 2706(a)(1) of the Crimes Code, 18 Pa. C.S. §2706(a)(1), and was sentenced the same day by the Carbon County Court of Common Pleas (trial court) to a term of one to two years in an SCI, plus 50 hours of community service. *Id.* at 33, 66. The remaining charges were dismissed. *Id.* at 66.

On April 13, 2018, Parolee was returned to the Board's custody, and, on May 9, 2018, he waived his right to counsel and a revocation hearing, and admitted that he pleaded guilty to the charge of terroristic threats with

7

intent to terrorize another, which is graded as a misdemeanor of the first degree. C.R. at 35, 51.[] By decision mailed on August 15, 2018, the Board recommitted[] Parolee to serve 12 months' backtime for the offense of terroristic threats, and declined to award credit for the time he spent at liberty on parole because the "new conviction involved possession of a weapon." *Id.* at 75-76. His maximum sentence date was recalculated as June 3, 2020. *Id.* at 75.

*Allen*, slip op. at 2-3 (footnotes omitted).

In *Allen* our Court rejected Inmate's assertion that the Board denied him credit for the time he spent at liberty on parole based on his conviction for an offense that requires the use of a firearm as an element of the offense.

Rather, the Board's stated reason for denying such credit was the use of a weapon in Parolee's commission of the terroristic threats offense of which he was admittedly convicted.[] As outlined above, the Board's reasoning for the exercise of its discretion demonstrates that it considered Parolee's individual circumstances with respect to the commission of this crime, and it is amply supported by the Certified Record of this case.

*Allen*, slip op. at 10 (footnote omitted). We also rejected Inmate's assertion that the time he spent in pre-trial detention until he was sentenced on the new charges should be credited to his original sentence instead of to his new sentence. During the relevant time period, Inmate was detained on the Board's warrant, and he did not post bail on the new charges. *Allen*, slip op. at 13. We analyzed Section 6138(a)(5) of the Prisons and Parole Code, 61 Pa. C.S. §6138(a)(5), and *Gaito v. Pennsylvania Board of Probation and Parole*, 563 A.2d 545 (Pa. Cmwlth. 1989), and concluded that the time was properly credited to Inmate's new sentence. *Allen*, slip op. at 14. *Allen* was filed on February 15, 2022, and Inmate did not appeal that decision.

8

Here, Respondents' defense of *lis pendens* must fail because the prior action, *Allen*, is no longer pending, rendering this defense moot. However, we sustain Respondents' demurrer on this claim, because Inmate failed to aver sufficient facts to support his argument that the Board's denial of time credit violates the *ex post facto* clauses of the U.S. or Pennsylvania Constitutions. *See* Petition at 9. In order for a law to violate the *ex post facto* prohibition, "the law must retrospectively alter the definition of criminal conduct or retrospectively increase the penalty by which a crime is punishable." *Frederick v. Department of Transportation, Bureau of Driver Licensing*, 802 A.2d 701, 704 (Pa. Cmwlth. 2002). The *ex post facto* prohibition "applies only to statutes which involve the imposition of penal sanctions." *Id.* Inmate did not cite to or argue that a statute retrospectively altered the definition of his criminal conduct or penal sanctions being applied to him. *See* Petition at 9. Inmate simply disagrees with the Board's decision to deny him credit for time spent at liberty on parole, which our decision in *Allen* already addressed.

We next turn to Inmate's mandamus action regarding his parole denials and Respondents' preliminary objections. Through his mandamus petition, Inmate asks the Court to take action and rectify the Board's parole denials and to order his release. *See* Petition at 11. Mandamus is "an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the petitioner, a corresponding duty in the respondent, and want of any other adequate and appropriate remedy." *Wilson v. Board of Probation and Parole*, 942 A.2d 270, 272 (Pa. Cmwlth.), *appeal dismissed as moot* 963 A.2d 990 (Pa. 2008). Mandamus "is not available to establish legal rights, but is appropriate only to enforce rights that have been established." *Id.* In evaluating preliminary objections, "we must consider as true all well-pleaded material facts set forth in the petition and

9

all reasonable inferences that may be drawn from these facts." *Id.* Preliminary objections will be sustained "only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief." *Id.* We need not accept as true "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.*

Under the applicable standards, Inmate's procedural due process claim under the Fourteenth Amendment to the U.S. Constitution must fail, because Inmate has no constitutionally protected liberty interest in receiving parole.

> Parole is nothing more than a possibility, and, when granted, it is nothing more than a favor granted upon a prisoner by the state as a matter of grace and mercy shown by the Commonwealth to a convict who has demonstrated a probability of his ability to function as a law abiding citizen in society. Because it is a favor, a prisoner has neither an absolute right to parole nor a liberty interest in receiving parole. In other words, in Pennsylvania, a prisoner has no constitutionally protected interest in being released from confinement prior to the expiration of his or her maximum term. Because parole is a favor that lies solely within the Board's discretion, and because a prisoner lacks a liberty interest in being paroled, it has been consistently held that a prisoner has no right to appeal a decision of the Board denying a request for parole.

*Weaver*, 688 A.2d at 770 (internal citations omitted). Further, after careful review of the averments in Inmate's petition, we discern no evidence that Respondents failed to provide him with notice and opportunity to be heard in his parole denials. *See* Inmate's Petition at 2, 6. In each decision to deny Inmate's parole, the Board interviewed Inmate, reviewed his file, and considered all matters required by the Board before reaching its decision. *See* Petition, Exhibit A at 3, 5, and 6. Inmate argues that Respondents acted arbitrarily when they denied his parole because he

10

failed to admit to a weapons offense for which he was never charged or convicted. This argument is not supported by the Board's parole decisions, which do not list Inmate's failure to admit to a weapons offense as a reason for denial. *Id.* The Board, in its discretion, determined that Inmate's "version of events leading to [his] new conviction is not credible," he "refuses to accept responsibility for the offense(s) committed," and he continues to display a "lack of remorse" for the offense committed. *Id.* Although Inmate may disagree with the Board's reasons for denying him parole, he failed to aver sufficient facts to establish that his procedural due process rights under the Fourteenth Amendment were violated, and we sustain Respondent's demurrer on this claim.

Similarly, we reject Inmate's claim that Respondents' parole denials violated his substantive due process liberty interest under the Fourteenth Amendment. Inmate has no liberty interest in parole. *Weaver*, 688 A.2d at 770. The due process clause "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (citation omitted). In a substantive due process analysis, "we must ask whether the officials have been deliberately indifferent to a liberty interest and deprived the plaintiff of that interest in such a way that the 'behavior of the governmental officer is so egregious, so outrageous that it may fairly be said to shock the contemporary conscience.'" *Id.* at 546-47 (citations omitted). After careful review of the averments in Inmate's petition, we discern no evidence that Respondents' decisions to deny him parole were egregious, outrageous, or that they shock the conscience of the Court. Although Inmate argues that because Respondents relied on a weapons offense for which he was never charged or convicted, they must have acted

arbitrarily or vindictively, Inmate fails to aver any facts to support this claim. *See* Petition at 8, Petition, Exhibit A at 3, 5, and 6. When ruling on preliminary objections, we need not accept as true "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Wilson*, 942 A.2d at 272. Therefore, we sustain Respondents' demurrer on this claim.

Finally, we turn to Inmate's claim that Respondents denied his parole in violation of his Fifth Amendment right to be free from self-incrimination. Inmate argues that his parole should not have been denied because he failed to admit to a weapons offense for which he was not charged or convicted. Petition at 3. In *Weaver*, 688 A.2d at 769, this Court considered an inmate's Fifth Amendment right to be free from self-incrimination, when he was denied parole for failure to participate in a sex offender treatment program that required him to admit to committing the rape for which he was convicted. We dismissed the inmate's mandamus action and held that the Board's refusal to grant parole, "as evident solely in its decision," was within the Board's discretion, and not a mandatory duty or a ministerial act. *Id.* at 777, 779. "Mandamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense." *Id.* at 777.

In *Wilson*, we considered an inmate's Fifth Amendment right to be free from self-incrimination when he was denied parole because he refused to participate in a sex offender treatment program when he was never convicted of the offense of corruption of minors. *Wilson*, 942 A.2d at 272. We explained that the Fifth Amendment right against self-incrimination, which prohibits the government from compelling a person to give self-incriminating testimony in a criminal case "'does not terminate at the jailhouse door.'" *Id.* at 273 (quoting *McKune v. Lile*, 536 U.S.

12

24, 36 (2002)).  We summarized the U.S. Supreme Court's holding in *McKune* as follows:

> In determining whether the Kansas Department of Corrections' sexual abuse treatment program violated a convicted sex offender's constitutional privilege against self-incrimination, the [U.S.] Supreme Court concluded that a prison rehabilitation program that bears a rational relation to a legitimate penological objective does not violate the privilege against self-incrimination if the adverse consequences for not participating are related to the program's objectives and do not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.

*Wilson*, 942 A.2d at 273.  We therefore concluded that the inmate's mandamus petition should be dismissed because he failed to state a claim.  *Id.*  We found that the sex offender program furthered a legitimate penological objective of rehabilitating those whose crimes include a sexual component.  *Id.*  We further concluded that the adverse consequence of denial of parole does not constitute "an atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*  The inmate's choice to remain silent gives no rise to a Fifth Amendment claim, as the government "'need not make the exercise of the Fifth Amendment privilege cost free.'" *Id.* (quoting *McKune*, 536 U.S. at 41).

Here, Respondents' denials of Inmate's parole do not require him to admit that he was charged with or convicted of a weapons offense in violation of his Fifth Amendment right.  Although Inmate disagrees with the reasons for his parole denials, "[m]andamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense."  *Weaver*, 688 A.2d at 777.  Respondents' denials of

13

Inmate's parole were based on his refusal to express remorse for his crime, failure to accept responsibility for his crime, and for his minimization of the circumstances of his crime, which are components designed to further the legitimate penological objective of Inmate's rehabilitation, and which do not present "an atypical and significant hardship in relation to the ordinary incidents of prison life." *Wilson*, 942 A.2d at 273; s*ee* Petition, Exhibit A at 3, 5, and 6. Inmate makes no averments that these grounds for parole denial are an atypical hardship. In fact, Inmate avers these parole denial grounds are typical, "boiler [p]late reasons." *See* Petition at 6. Therefore, we sustain Respondents' demurrer on this claim.

Accordingly, we sustain Respondents' preliminary objection in the nature of a demurrer to Inmate's constitutional claims, we dismiss as moot Respondents' defense of *lis pendens*, and dismiss Inmate's mandamus petition.

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Allen,                          :
                                     :
                    Petitioner       :
                                     :
          v.                         : No. 214 M.D. 2021
                                     :
Derek F. Oberlander,                 :
Superintendent, SCI-Forest,          :
and the Pennsylvania Board           :
of Probation and Parole,             :
                                     :
                    Respondents      :


O R D E R


          AND NOW, this 30<u>th</u> day of <u>August</u>, 2022, the preliminary objection in
the nature of a demurrer of Derek F. Oberlander, Superintendent, State Correctional
Institution-Forest, and Pennsylvania Board of Probation and Parole is SUSTAINED,
the defense of *lis pendens* is DISMISSED AS MOOT, and John Allen's Petition for
Review in the nature of a complaint for mandamus is DISMISSED.


                              _____
                              MICHAEL H. WOJCIK, Judge