David C. Bayles,            :
            Petitioner     :
                               :
           v.                  :
                               :
Unemployment Compensation    :
Board of Review,            :    No. 1639 C.D. 2015
           Respondent   :    Submitted: March 18, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: July 7, 2016

David C. Bayles (Claimant) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) August 3, 2015 order affirming the Referee's order denying him benefits under Section 402(e) of the UC Law (Law),[1] assessing fault overpayments pursuant to Section 804(a) of the Law,[2] and penalty weeks in accordance with Section 801 of the Law.[3] Essentially, Claimant presents two issues for this Court's review: (1) whether the UCBR's conclusion that Claimant engaged in willful misconduct was supported by substantial

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to Claimant's ineligibility due to willful misconduct).
[2] 43 P.S. § 874(a).
[3] 43 P.S. § 871. Claimant did not appeal from that portion of UCBR's order affirming the 28-week penalty assessment under Section 801(b) of the Law.

evidence; and (2) whether the UCBR erred and/or abused its discretion in upholding the assessed fault overpayments.[4] After review, we affirm.

Claimant was employed as a full-time lift operations manager by Whitetail Mountain (Employer) beginning on October 9, 2009. Claimant had been warned that his attendance had been unacceptable. Claimant suffered a work-related left knee injury for which he took a leave of absence beginning on August 17, 2012, and returning to work full-time on September 24, 2012. On October 1, 2, 22 and 23, 2012, Claimant notified Employer that he would be late for work, but never appeared or updated Employer regarding his status on those dates. On October 24, 2012, Claimant arrived at work, clocked in at 6:52 a.m. and fell asleep in Employer's operations room. On October 29, 2012, Employer terminated Claimant's employment due to continued absenteeism and sleeping at work.

Claimant applied to the Erie UC Service Center for UC benefits effective October 28, 2012. The claim record reflects that Claimant's stated reasons for his employment separation were "01" (not discharged) and "02" (laid off). Certified Record (C.R.) Item 1 (Claim Record) at 2; *see also,* C.R. Item 8 (UC Overpayment Classification Worksheet) at 1, Part C; C.R. Item 13 (Notes of Testimony, February 9, 2015 (N.T.)) at 4-5, UC Service Center Ex. 9. Claimant received UC benefits beginning the week ending November 10, 2012. On December 28, 2012, Employer filed a Request for Relief from Charges on the basis that Claimant had been discharged for excessive absenteeism and tardiness. On September 11, 2014, Employer issued an Advance Notice to Claimant that his UC benefits may be terminated because he was discharged for absenteeism/tardiness. During the UC

---

[4] In his brief, Claimant states his second issue as whether the UCBR erred by finding that Claimant received a fraud overpayment, and his third issue as whether the UCBR abused its discretion by affirming the Referee's decision justifying a fraud overpayment. Because the UCBR affirmed a "fault" rather than a "fraud" overpayment, and because both issues relate to the same topic, we restated the issues and combined them accordingly.

Service Center's investigation, Claimant admitted that he received warnings from Employer regarding his absences and tardiness, that his October 2012 absences were due to pain caused by his work-related injury and surgery, and that he properly called off from work.

On September 24, 2014, the UC Service Center issued three Determinations: (1) denying Claimant benefits for willful misconduct pursuant to Section 402(e) of the Law; (2) finding an $11,598.00 fault overpayment under Section 804(a) of the Law; and, (3) imposing 28 penalty weeks and a $1,739.70 cash penalty in accordance with Section 801 of the Law. Claimant appealed, and a Referee hearing was held on February 9, 2015.[5] Thereafter, the Referee affirmed the UC Service Center's three Determinations. Claimant appealed to the UCBR. On August 3, 2015, the UCBR affirmed the Referee's decision as to all but the Referee's cash penalty. Claimant appealed to this Court.[6]

Claimant first argues that the UCBR's conclusion that he engaged in willful misconduct was not supported by substantial evidence. Section 402(e) of the Law provides that a claimant shall be ineligible for UC benefits for any week where "his unemployment is due to his discharge . . . from work for willful misconduct connected with his work[.]" 43 P.S. § 802(e). "The employer bears the initial burden of proving a claimant engaged in willful misconduct." *Ductmate Indus. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). This Court has held:

---

[5] Hearings scheduled for November 5, 2014, November 13, 2014, November 26, 2014, December 11, 2014 and January 14, 2015 all were continued.

[6] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

3

Though not defined in the Law, willful misconduct has been interpreted to include: (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Oyetayo v. Unemployment Comp. Bd. of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). "Whether a claimant's actions rise to the level of willful misconduct is a question of law fully reviewable on appeal." *Ductmate Indus.*, 949 A.2d at 342.

Moreover, this Court has explained:

Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

At the Referee hearing, Employer presented excerpts from its employee handbook, Claimant's signed acknowledgement that he received, read and understood the employee handbook, Claimant's March 1 to October 29, 2012 attendance records, and the testimony of its President and General Manager Donald E. MacAskill (MacAskill), Claimant's supervisor Andrew Goshorn (Goshorn), and Electrician Larry Sowers (Sowers) in support of its position that Claimant engaged in willful misconduct.

Employer's employee handbook states that "[e]xcessive unexplained absences, excessive tardiness to work, or failure to do your job in a willing and

4

professional manner, could result in an immediate discharge." N.T. at Ex. E-3. Claimant acknowledged his receipt and understanding of that policy as far back as January 11, 2010. *See* N.T. at Ex. E-4.

MacAskill testified that, since April 2012, Claimant had a history of being late for work or not showing up at all. MacAskill contended that although Claimant had suffered a work-related injury over the winter, he never notified Employer that his tardiness and/or absenteeism was related to his work injury. MacAskill declared that the day after Claimant returned from his August 17, 2012 to September 24, 2012 leave for knee surgery, he and Goshorn met with Claimant and discussed his attendance. MacAskill specifically recalled Claimant notifying him that he was under no limitations that would prevent him from fulfilling his duties as lift operations manager and MacAskill advising Claimant that, as a department head, it was crucial that he set the tone for his employees, particularly regarding attendance. MacAskill asserted that, as a department head, Claimant was fully aware of Employer's call-off policy and no-call, no-show consequences, and was responsible for others complying with that policy.

Notwithstanding, MacAskill explained that, the following week, on October 1 and 2, 2012, Claimant texted that he would be late, but never reported to work. MacAskill stated that, when Claimant returned to work, he and Goshorn met with him about his behavior and warned him that such actions could result in his discharge. MacAskill related that on October 22 and 23, 2012, Claimant again texted that he would be late for work and never showed.

MacAskill described, and Claimant's time sheets reflect, that Claimant arrived at work and punched in at 6:52 a.m. on October 24, 2012. *See* N.T. at Ex. E-2 at 8. MacAskill asserted that shortly after 7:00 a.m., Sowers notified him that Claimant was asleep in the operations center. MacAskill ordered Sowers to wake Claimant and have him report to MacAskill's office. He recalled that when Claimant

5

reported to him at approximately 7:30 a.m., Claimant maintained that he was simply resting his eyes. MacAskill testified that he told Claimant to leave work and not to return until he and Goshorn could discuss Claimant's status.[7] MacAskill explained that he and Goshorn met with Claimant on October 29, 2012:

> [W]e said unfortunately you have been unable to meet our expectations. Your attendance has been poor, you've been late many, many times; in a department head position[,] this is not acceptable. In addition[,] you were sleeping on the job when you were on the clock and were supposed to be working and therefore . . . we have to terminate your employment.

N.T. at 13.

Goshorn confirmed Claimant's 2012 attendance issues, and acknowledged that Claimant told him about having pain, difficulty sleeping, and possible diabetes and depression, but not after he returned to work in September 2012. *See* N.T. at 17-18, 20-21. Goshorn also recalled the meeting he and MacAskill had with Claimant on September 25, 2012, during which Claimant assured them that he was capable of being on time for work and handling his job duties for the upcoming season.

Goshorn related, however, that after only one week, Claimant again failed to report to work. Goshorn recalled reminding Claimant that since Employer needed a lift operations manager for the upcoming season, he was expected "to step up to the plate[.]" N.T. at 17. He also recollected asking Claimant on one occasion if he was trying to get fired, to which Claimant responded that he would work on his issues and start coming to work on time. Goshorn stated that the reasons Claimant was given during the October 29, 2012 meeting for his discharge were his poor attendance and sleeping on the job. Goshorn did not specifically remember, but

---

[7] Goshorn was taking care of a medical situation at the time, and was not immediately available.

6

admitted the possibility that when Claimant asked why he was being fired, Goshorn told Claimant that Employer was going in a different direction. *See* N.T. at 20.

Sowers recounted receiving a text from Claimant some time in October, wherein, Claimant stated he was going to be late for work. He advised Claimant that, since Goshorn was Claimant's boss, Claimant must notify Goshorn directly. Sowers also related that, during one time Goshorn was out of the office, Claimant notified Sowers in person over the weekend that he would be late for work on Monday, October 22, 2012 because he would be waiting at home for a satellite TV technician who was scheduled to arrive before noon, but Claimant did not report for work at all that day.

Sowers further testified that, on October 24, 2012 between approximately 7:05 and 7:10 a.m., he witnessed Claimant sleeping in the operations office. He described that Claimant had his head back and feet propped up. Sowers reported the matter to MacAskill and, at MacAskill's instruction, woke Claimant and told him to report to MacAskill.

During cross-examination by Claimant, Payroll/Human Resources Administrator Tammy Jones (Jones) admitted that when she completed Employer's notice of separation on September 29, 2014, under "Reason for Separation," rather than "misconduct," she checked "other" and added "[a]bsenteeism – missed 4 days in the last 7[-]day period." N.T. at 25, Ex. E-5.

Claimant testified that he missed a lot of work prior to his August 17 to September 24, 2012 leave due to the pain from his work injury. He admitted that Goshorn spoke with him before his surgery and warned him that administration was concerned about the amount of time he was missing.

Claimant could not recall the circumstances surrounding his October 1 and 2, 2012 absences. However, Claimant related that he had notified Sowers over the weekend that he would be late for work on October 22, 2012, and that he called

7

Employer again at noon and told a co-worker that things were taking longer than he expected and that he would call back and state whether it would make sense for him to go into work that day. He claimed that he spoke to Sowers after the technician finished at 1:30 p.m., and described that since he finished work at 3:30 p.m. and he had a 4:30 p.m. therapy appointment, it did not make sense for him to drive into work.

Claimant contended that since his October 22, 2012 therapy put stress on his knees, he texted Sowers and stated that he hoped to be in around 9:00 a.m. He recalled texting Sowers around 9:00 a.m. and stating that he would report in again around noon, then at noon calling Sowers and telling him that he would not be in that day after all.

Claimant recounted that he reported to work on October 24, 2012 feeling tired because: "I'm not a morning person, I don't sleep well, I have obstructive sleep apnea." N.T. at 29. He declared that since it was approximately 6:30 a.m., there was nothing going on and it was quiet and warm, he sat down in the maintenance office area and dozed off. He claimed that this occurred before he was to clock in for the day at 7:00 a.m. Claimant also stated that Sowers did not wake him; rather, MacAskill called him to his office at 7:30 a.m. He testified that MacAskill asked him if everything was all right, and he responded that he had not slept well because his knee was bothering him. Claimant recollected that MacAskill did all of the talking at the October 29, 2012 meeting. He specifically related: "[MacAskill] said . . . we've decided to go in a different direction." N.T. at 31-32.

Claimant explained that Employer did not have a specific procedure for calling off work, and processes used were "very inconsistent." N.T. at 32. He expressed that other employees came in late and called irregularly but were not disciplined. Claimant admitted that he assured MacAskill and Goshorn on September 25, 2012 that he was completely capable of carrying out his job duties and wished to

remain the lift operations manager. *See* N.T. at 34. He claimed that he did not take from that meeting that there would be consequences regarding his absenteeism. Claimant acknowledged that when he applied for UC benefits, he reported that he was discharged because Employer was moving in a different direction. He articulated that he did not mention his absenteeism or sleeping on the job in his application because he did not know that was the reason. Claimant admitted that he received $11,598.00 in UC benefits between November 10, 2012 and May 4, 2013.

> The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus.,* 949 A.2d at 342 (citations omitted).

> Based upon the evidence, the UCBR made the following relevant findings:

> 2. On September 24, 2012, [Claimant] returned to full duty following a leave of absence due to knee surgery.

> 3. [MacAskill] met with [Claimant] and notified him that his attendance before the leave of absence was unacceptable and that, as a department manager, he must set the tone and be an example for other employees.

> 4. [Claimant] was absent October 1 and 2, 2012.

> 5. On October 22 and 23, 2012, [Claimant] notified [Employer] he would be late, but never reported for work or updated [Employer] on his status.

9

6. On October 24, 2012, [Claimant] arrived at work, clocked in at 6:52 a.m., entered the operations center, and fell asleep.

7. When confronted, [Claimant] did not blame his sleeping on apnea.

8. On October 29, 2012, [MacAskill] notified [Claimant] that he was discharged for continued absenteeism and sleeping at work.

9. Effective October 28, 2012, [Claimant] applied for [UC] benefits, notifying the Department of Labor and Industry [(Department)] that he was laid off for lack of work.

10. For the weeks ending November 10, 2012[] through May 4, 2013, [Claimant] filed claims for and received $11,598.00 in [UC] benefits.

UCBR Dec. at 1-2.

"In [a UC] appeal, the [UCBR's] factual findings are conclusive on appeal so long as the record taken as a whole contains substantial evidence to support those findings." *Big Mountain Imaging v. Unemployment Comp. Bd. of Review*, 48 A.3d 492, 494 (Pa. Cmwlth. 2012). After a thorough review of the record, we conclude that there was substantial evidence to support the UCBR's findings in this case, and thus it is beyond our authority to re-evaluate them. *Duquesne Light Co. v. Unemployment Comp. Bd. of Review*, 648 A.2d 1318 (Pa. Cmwlth. 1994).

Based upon its findings, that UCBR concluded:

[Employer] discharged [Claimant] for continued absenteeism and sleeping at work. When an employee has good cause to be absent and properly reports off or has good cause for failing to properly report off, the absence or failure to report off is not willful misconduct.

[Claimant] testified that his final absences were due to home maintenance and knee pain. Regardless of the reason for his absences, [Claimant] did not notify [Employer] he would be absent and has not justified his lack of notice. Even if the [Claimant's] absenteeism was not willful

10

misconduct, his sleeping on the job was. Although [Claimant] asserted his apnea contributed to him falling asleep at work, his failure to assert this when confronted by [Employer] negates its use as good cause. Therefore, benefits must be denied under Section 402(e) of the Law.

UCBR Dec. at 2.

This Court has held that "[a]bsenteeism alone, while grounds for discharge, is not a sufficient basis for denial of unemployment benefits." *Runkle v. Unemployment Comp. Bd. of Review*, 521 A.2d 530, 531 (Pa. Cmwlth. 1987). However,

> [f]actors that are considered in determining whether absenteeism constitutes willful misconduct are: (1) excessive absences; (2) failure to notify the employer in advance of the absence; (3) lack of good or adequate cause for the absence; (4) disobedience of existing company rules, regulations, or policies with regard to absenteeism; and (5) disregard of warnings regarding absenteeism.

*Miller v. Unemployment Comp. Bd. of Review*, 131 A.3d 110, 113 (Pa. Cmwlth. 2015). Further, "[a] conclusion that the employee has engaged in disqualifying willful misconduct is especially warranted in . . . cases where [as here] the employee has been warned and/or reprimanded for prior similar conduct." *Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013) (quoting *Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 479 A.2d 57, 58 (Pa. Cmwlth. 1984)). Finally, sleeping on the job, "if proven or admitted and absent proof that the employer condones such behavior, can constitute willful misconduct." *Mine Safety Appliances Co. v. Unemployment Comp. Bd. of Review*, 423 A.2d 798, 799 (Pa. Cmwlth. 1980).

"Once the employer meets its burden, a claimant may then prove he had good cause for his actions. Good cause is established where the action of the employee is justifiable or reasonable under the circumstances[.]" *Umedman v.*

*Unemployment Comp. Bd. of Review*, 52 A.3d 558, 561 (Pa. Cmwlth. 2012) (quoting *Dep't of Corr. v. Unemployment Comp. Bd. of Review,* 943 A.2d 1011, 1015 (Pa. Cmwlth. 2008) (citation and quotation marks omitted)). "[W]hile illness is a good cause defense to a charge of willful misconduct due to excessive absenteeism, it is incumbent upon the claimant to establish that illness was indeed the cause of h[is] absenteeism, which is an affirmative fact." *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993) (citation omitted).

In this case, Claimant did not provide any reason for his failure to report to work on October 1 and 2, 2012 as scheduled, Claimant stated that his October 22, 2012 absence was due to the TV repairman's schedule, and Claimant's excuse for his October 23, 2012 absence was due to pain caused by therapy. There is substantial evidence to support that although Claimant may have reported that he would be late for work on October 22 and 23, 2012, he never actually showed up. Even if we accepted that Claimant's October 23, 2012 absence was for good medical cause, lack of good cause for the three remaining dates, particularly in light of Claimant's history of such conduct, was a sufficient basis upon which the UCBR could find that Claimant engaged in willful misconduct.

Additionally, although Claimant contends that he was not sleeping during his scheduled work hours, there is substantial record evidence to support the UCBR's finding that Claimant clocked in at 6:52 a.m., and that he was discovered sleeping after his 7:00 a.m. shift began. Claimant produced no evidence that Employer condoned such behavior or that his sleeping was due to a medical condition. Under the circumstances, Claimant's sleeping on the job on October 24, 2012 was sufficient to establish willful misconduct. *Mine Safety Appliances Co.* Accordingly, the UCBR did not err by concluding that Claimant engaged in willful misconduct.

Claimant next argues that the UCBR erred and/or abused its discretion in upholding the assessed fault overpayment. Specifically, Claimant avers that there is no evidence to support a misrepresentation on his part when he completed the online UC benefit application. We disagree. Section 804(a) of the Law provides, in relevant part:

> Any person who by reason of his fault has received any sum as compensation . . . to which he was not entitled, shall be liable to repay . . . a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue . . . .

43 P.S. § 874(a).

Here, the claim record admitted into the record without objection, *see* N.T. at 4-5, is corroborated by Claimant's admission that he failed to notify the UC Service Center that Employer discharged him for absenteeism and sleeping on the job. Based upon Claimant's corroboration of the claim record entry, the UCBR did not err by finding Claimant notified the Department that he was laid off, rather than discharged. Moreover, it is undisputed that based upon his misrepresentations to the Department, Claimant was granted benefits in the amount of $11,598.00 to which he was later deemed not entitled. Accordingly, the UCBR properly assessed a fault overpayment against Claimant in the amount of $11,598.00.

Based upon the foregoing, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David C. Bayles,                            :
                       Petitioner            :
                                    :
               v.                             :
                                      :
Unemployment Compensation    :
Board of Review,                          :    No. 1639 C.D. 2015
                      Respondent         :

## O R D E R

AND NOW, this 7th day of July, 2016, the Unemployment Compensation Board of Review's August 3, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge