Warminster Fiberglass Co., Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued June 6, 1974, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*Richard W. Berlinger*, with him *Malis, Tolson & Malis*, for appellant.

*Sydney Reuben*, Assistant Attorney General, with him *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE BLATT, October 18, 1974:

This is an appeal from an adjudication of the Unemployment Compensation Board of Review (Board)

dated September 18, 1973, which reversed an order of the referee denying the claim of Joan L. Brooks (claimant).

The claimant was employed for approximately five and one-half years as a fiberglass cutter by the Warminster Fiberglass Company (employer), the appellant herein, and her last day of work was September 26, 1972. A history of absences and of recent warnings by the employer had marred her work record. The day before her last day at work, she suffered a cut finger in a non-job related accident and stitches were required. She reported to work on the next day as usual but notified the employer then that she would be absent on the day following to seek medical attention. Her physician advised her then not to return to work until the following Monday, October 2, 1972, and she notified her supervisor on Thursday, September 28, 1972, of this advice and of her intention to remain absent. At that time she also requested permission to leave her home long enough to have a prescription filled and to purchase some groceries for her children. The supervisor, although agreeing that she should have the prescription filled, refused to authorize her absence from home for the purchase of groceries, citing her employer's contract with the claimant's union which prohibited outdoor excursions by employees taking time off for sickness, when such excursions were for non-medical reasons.

Section 3 of the contract in question provides:

"The Union and Management agree on the following sick pay rules clarifications:

"(a) When any employee is out sick under the following Sick Pay Plan he will remain at home unless going to or from the doctor's, picking up a prescription or going to a hospital clinic for x-rays, treatment or other activity directly related to recuperation.

"(b) If any employee is sick, and is not going to be home or be engaged in one of the activities men-

tioned in the above paragraph (a), then he must call the Company dispensary.

. . . .

"(g) Union and Management agree that any willful deception concerning the Sick Pay Plan is inexcusable and have determined that in the case of 'cheating on sick pay' an employee invites immediate dismissal from the Company."

The claimant indicates that she was aware of these contract provisions, and admits that in spite of her employer's instructions to the contrary, she did stop to purchase some groceries on her way home during the late evening hours of September 28, 1972, after she had attempted unsuccessfully to have her prescription filled. Meanwhile, it happened that an employer's representative made a spot visit to her residence and, of course, found her not at home.

The day after the incident described above, the claimant was summoned to a conference by her supervisor, who then discharged her for violating Section 3(a) of the employer-union contract. The claimant's subsequent application for unemployment compensation was rejected by the Bureau and then by the referee after a hearing. On appeal, the Board reversed and granted benefits. From that decision the employer now appeals.

In reviewing an unemployment compensation case, this Court is confined to questions of law and to a determination of whether the findings of the Unemployment Compensation Board of Review are supported by substantial evidence. *Bledsoe v. Unemployment Compensation Board of Review,* 13 Pa. Commonwealth Ct. 34, 317 A. 2d 320 (1974). Here the Board found that the claimant's action did not rise to the level of "willful misconduct" in connection with her work sufficient to disqualify her from benefits under Section 402(e) of the Unemployment Compensation Law, Act of Decem-

ber 5, 1936, Second Ex. Sess., P. L. (1937) 2897, *as amended,* 43 P.S. §802(e). The employer alleges that this conclusion of law was in error, but, although the case is a close one, we must agree with the Board.

The term "willful misconduct" was not given a legislative definition, but we have held it to be: "[A]n act of *wanton* or *willful* disregard of the employer's interest, a *deliberate* violation of the employer's rules, a *disregard* of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest *culpability, wrongful intent,* or *evil design,* or show an *intentional* and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." (Emphasis in original.) *MacFarlane v. Unemployment Compensation Board of Review,* 12 Pa. Commonwealth Ct. 550, 552, 317 A. 2d 324, 325-326 (1974). Using this definition, we have held that the deliberate violation of an employer's rule constitutes willful misconduct. *DiAmico v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 286, 310 A. 2d 433 (1973). On the other hand, we have also held that not all instances in which an employee has disobeyed his employer's instructions constitute willful misconduct sufficient for the denial of benefits. *Loder v. Unemployment Compensation Board of Review,* 6 Pa. Commonwealth Ct. 484, 296 A. 2d 297 (1972) ; *Morgan v. Unemployment Compensation Board of Review,* 174 Pa. Superior Ct. 56, 98 A. 2d 258 (1953). In *Loder, supra,* the claimant was advised by her employer to attend a meeting concerning "her attitude" toward the job. She was advised that if she did not attend her employment would be terminated. When she did not attend and was consequently discharged, the Board characterized her action as willful misconduct and refused to grant unemployment benefits. We reversed, however, stating that a "single instance of an employee refusing to carry

out the instructions of an employer may be of such a serious nature that it could be classified as willful misconduct, but a single dereliction of a minor, or casual, or insignificant nature will not constitute willful misconduct." *Loder, supra,* 6 Pa. Commonwealth Ct. at 488, 296 A. 2d at 300.

Unquestionably the instant facts present a close case, but we agree with the Board that the claimant's dereliction here does not constitute willful misconduct. The burden of proof is, of course, upon the employer. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A. 2d 165 (1973). And, although the claimant had a history of absences, the record reveals nothing to indicate that the particular absence here involved was unjustified. The claimant had in fact suffered an injury, had informed her employer of it, and had explained the anticipated duration of her absence. It was not the absence itself, therefore, which resulted in her discharge, but rather her disobedience to the employer's instruction to remain in her home. We observe, however, that she had telephoned her employer in good faith as required by Section 3(b) and had asked permission to leave her home for what otherwise would have been a reasonable purpose. The union contract rules here in question did not actually require her to ask such permission, but merely required that the employee call in to the dispensary if the employee "is not going to be home or be engaged in one of the activities mentioned in paragraph (a). . . ." It is apparent, therefore, that she complied with all of the rules and violated only the oral instruction of the employer, and this brings the case within the ambit of the decision in *Loder, supra.* It must be shown, therefore, that the employee's action was hostile to the interests of the employer, and here we have no such evidence. Aside from establishing what was asserted to be a violation of a

rule, the employer presented no evidence whatever to demonstrate that the claimant's excursion impeded her recuperation or was in any way hostile to its best interest. The employer, of course, had the burden of proof, which was clearly not sustained. And we might note, moreover, that a cut finger is not the kind of injury which ordinarily would require indoor confinement for recovery. We must hold, therefore, with the Board, that the claimant's disobedience in relation to her employer's instructions did not constitute willful misconduct within the meaning of the Unemployment Compensation Law.

Accordingly, we enter the following

### ORDER

Now, October 18, 1974, the order of the Unemployment Compensation Board of Review, dated September 18, 1973, reversing the decision of the referee and allowing benefits, is affirmed.