IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K-Brooke Enterprises d/b/a Barberry : 
Farm, : 
                              Petitioner : 
 : 
            v. : No. 208 C.D. 2017
 : Submitted: October 17, 2017
Unemployment Compensation Board : 
of Review, : 
                              Respondent : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: November 15, 2017


            K-Brooke Enterprises d/b/a/ Barberry Farm (Employer) petitions for
review from an order of the Unemployment Compensation Board of Review
(Board) finding Joshua J. Moore (Claimant) not ineligible for benefits under
Section 402(e) of the Unemployment Compensation Law (Law)[1] because

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–918.10.  Section 402(e) provides, in pertinent part:

       An employe shall be ineligible for compensation for any week—

                              * * *

**(Footnote continued on next page…)**

Employer failed to establish that his discharge was due to willful misconduct.  We affirm the decision of the Board.

# I.

The underlying facts are largely undisputed.  Claimant worked full-time as a laborer at Employer's horse boarding farm from May 23, 2016, until June 21, 2016.  Employer verbally advised its employees that if they were absent from scheduled work they were expected to contact Employer via telephone, text message or email to report the absence.  Claimant was aware of this general requirement.

On June 16, 2016, Claimant was arrested and incarcerated due to a domestic dispute with his girlfriend.  When arrested, Claimant was initially permitted access to his cell phone, and he used it to send the following text messages to Employer:

> (1/2) My girlfriend called the cops on me cuz [sic] she's nuts so I'm not going to make it in tomorrow unless I can post bond but it might be to [sic] late but she relized [sic]

---

**(continued…)**

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act. . . .

43 P.S. § 802(e).

2

(2/2) what she did and cred [sic] to the cops not to take
me so I will be gone not long hopefully[.]

(Record (R.) Item No. 13, p. 3.) Employer's agent responded that same day, stating "Ok[.] I'm not sure what to say[.] I guess you'll let me know when you are out and we can talk face to face[.]" (*Id.*)

On June 21, 2016, Employer discharged Claimant because he was a no-call/no-show for work on June 20 and 21, 2016. The termination letter sent to Claimant stated, in pertinent part:

> This letter serves as written notice of your termination from employment at Barberry Farm, effective June 21, 2016.
>
> You have not contacted any member of the management team since Thursday, June 16. Your lack of communication regarding your scheduled shifts on June 20 and 21 constitutes two no-call/no-shows and has resulted in your termination.

(R. Item No. 10, Exhibit E-1.)

Claimant filed an application for benefits with the Unemployment Compensation (UC) Service Center indicating that he was discharged due to absenteeism and that he followed Employer's call-off procedure on his last absence. In the UC Questionnaire and in a follow-up telephone call placed by the Service Center, Employer stated that Claimant did not provide a reason for his last absence and Employer never heard from him after June 16, 2016. Claimant told

3

the Service Center during a follow-up telephone call that he was not able to let Employer know how long he would be incarcerated because he did not know at that point and he was not able to make another telephone call. The Service Center issued a notice of determination finding Claimant eligible for benefits and Employer appealed.

Before the Referee, Kirsten Recker (Recker), Employer's President, testified that Claimant's employment was terminated due to abandonment. She testified that the decision to terminate Claimant was made for both the absenteeism and his failure to keep in contact because he did not contact her for five days after his arrest. Recker admitted there was no formal, written policy about calling off, but testified that she informed all of her employees that they must call, text or email when they were going to be absent, and she expected this to be done every day an employee missed work. Recker testified that Claimant had other issues during his employment but this was the first time he had been absent.

Claimant testified that he did not contact Employer while in jail because he no longer had access to his cell phone, and to place a telephone call from jail, someone would have to set up an account with the jail and put money into that account to pay for the charges ahead of time. Claimant further testified that his girlfriend called Employer's manager to explain that he was still in jail, but she was told the decision had already been made to terminate his employment. Claimant received the termination notice upon his release from jail. Claimant was never convicted of any crime in relation to his arrest.

The Referee found Claimant eligible for benefits because Employer failed to meet its burden of establishing willful misconduct. The Referee specifically found that Claimant made a good-faith effort to notify Employer of his anticipated absence via text message so that Employer could anticipate an absence for a reasonable amount of time, and Claimant did not contact Employer after June 16, 2016, because of issues with phone accessibility. The Referee also found that Claimant no longer had access to his cell phone once he was processed at the jail; he used his one free telephone call to attempt to arrange for bail; and he was not permitted to otherwise utilize the telephone unless he was able to provide funds to pay for the call. In any event, the Referee reasoned that Employer admittedly did not have a strictly enforced policy requiring employees to report off each day they were absent.

Employer appealed and the Board affirmed based on the Referee's decision. This appeal followed.[2]

## II.

Employer first argues that it met its burden of establishing that it had a rule requiring employees to report absences, that Claimant was aware of this rule,

---

[2] Our scope of review of the Board's decision is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Rock v. Unemployment Compensation Board of Review*, 6 A.3d 646, 648 n.5 (Pa. Cmwlth. 2010). We have defined "substantial evidence" as such "relevant evidence that a reasonable mind might consider adequate to support a conclusion." *Palladino v. Unemployment Compensation Board of Review*, 81 A.3d 1096, 1100 n.3 (Pa. Cmwlth. 2013).

and that Claimant failed to contact Employer to report absences on two consecutive days during his incarceration. Based on those findings, Employer asserts that the Board committed an error of law by concluding that Claimant did not engage in willful misconduct.[3] We disagree.

When a claimant is discharged for a work rule violation, the employer bears the burden of demonstrating that the claimant was aware the work rule existed and that the claimant violated the rule. *Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). "[T]he employer must also establish that the claimant's actions were intentional or deliberate . . . and the employee's actions must be considered in light of all of the circumstances, including the reasons for his or her noncompliance with the employer's directives." *Id.* (citations omitted). "[A] violation of an employer's rule or demand is not willful misconduct 'if the evidence shows that the employe's action was justifiable and reasonable in light of all circumstances and was taken with good cause.'" *Fritz v. Unemployment Compensation Board of Review*, 446

---

[3] Although the Law does not define the term "willful misconduct," the courts have defined it as:

> (1) wanton or willful disregard for an employer's interests; (2) deliberate violation of an employer's rules; (3) a disregard for the standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Philadelphia Parking Authority v. Unemployment Compensation Board of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010).

6

A.2d 330, 332 (Pa. Cmwlth. 1982) (quoting *Kindrew v. Unemployment Compensation Board of Review*, 388 A.2d 801, 802 (Pa. Cmwlth. 1978)).

First, Employer did not establish that Claimant violated a work rule. While Recker's testimony established a policy that an employee was expected to call-off when absent, she admitted that this policy was not written and was not strictly enforced. Not only was the call-off policy not strictly enforced, Employer did not establish that there is a specific policy requiring employees to contact Employer every day they are absent from work. Recker's testimony was that she considered this to be a common courtesy and she "expected" employees to call, text or email every day they missed work, which is insufficient to establish the existence of a specific work rule. Claimant satisfied the work rule because he immediately informed Employer that he would be unable to report to work due to his incarceration.

Second, Employer also failed to prove that Claimant deliberately or intentionally violated its work rule of calling in each day he was absent. The Board found Claimant's testimony to be credible that he was not permitted to utilize the telephone at the jail unless he was able to provide funds to pay for the telephone call, and that is why he did not contact Employer on June 20 and 21, 2016.[4] *See Hawkins v. Unemployment Compensation Board of Review*, 472 A.2d

---

[4] Employer argues that the Service Center's record of the oral interview with Claimant, wherein he stated that he was not able to call Employer after June 16, 2016, because he was incarcerated, should not have been admitted because it is hearsay. Employer goes on to argue that this hearsay statement is the only evidence in the record to support the Board's finding that Claimant was unable to use a telephone during his incarceration. We first note that Employer failed to object, on any grounds, to this evidence being entered into the record. Moreover, **(Footnote continued on next page…)**

1191, 1192 (Pa. Cmwlth. 1984) (holding employee's failure to report on three consecutive days due to his incarceration did not "constitute[] a willful or wanton disregard of his obligation to his employer.") (citing *Warminster Fiberglass Company v. Unemployment Compensation Board of Review*, 327 A.2d 219 (Pa. Cmwlth. 1974)).

Regarding Claimant's absences, it is well established that "[a]bsenteeism alone, while grounds for discharge, is not a sufficient basis for denial of unemployment benefits." *Miller v. Unemployment Compensation Board of Review*, 131 A.3d 110, 113 (Pa. Cmwlth. 2015) (quoting *Runkle v. Unemployment Compensation Board of Review*, 521 A.2d 530, 531 (Pa. Cmwlth. 1987)). Factors we consider in determining whether absenteeism constitutes willful misconduct include excessive absences, failure to notify the employer in advance, lack of good or adequate cause for the absence, disobedience of existing rules or policies regarding absenteeism, and disregard of warnings regarding absenteeism. *Miller*, 131 A.3d at 113.

---

**(continued…)**

"[u]nder the 'legal residuum' rule, hearsay evidence admitted without objection will be given its natural probative effect 'if it is corroborated by any competent evidence in the record.'" *Greer v. Unemployment Compensation Board of Review*, 4 A.3d 733, 737 n.7 (Pa. Cmwlth. 2010) (quoting *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976)). Claimant testified that he did not have access to his cell phone after he was processed at the jail, and in order to make a telephone call, he would have to set up an account with the jail and provide funds for his calls up front. Therefore, even if Claimant's statement to the Service Center was impermissible hearsay, the Board did not err in using the statement to support its finding that "Claimant was not permitted to otherwise utilize the telephone unless he was able to provide funds to pay for the telephone call." (R. Item No. 11, p. 2).

Here, there is no allegation that Claimant incurred excessive absences during his employment and Employer admitted that he was not previously warned regarding absenteeism. As discussed above, there was no written policy stating that employees had to report their absences on a daily basis, and Claimant notified Employer immediately upon his incarceration.

Citing to *Medina v. Unemployment Compensation Board of Review*, 423 A.2d 469 (Pa. Cmwlth. 1980) and *Frank v. Unemployment Compensation Board of Review*, 556 A.2d 15 (Pa. Cmwlth. 1989), Employer contends that incarceration is not a reasonable or justifiable excuse for being absent from work. However, neither one of those cases are applicable because each involve an absence due to a conviction, not pretrial incarceration. In *Medina*, the employee was absent from work due to his conviction and six-month sentence for the crime of assault, and the employee in *Frank* pled guilty to one count of welfare fraud and was absent during her 2½ to 23-month jail sentence.

Unlike in *Medina* or *Frank*, which involved incarceration for a conviction, an "[a]bsence from work due to pre-trial incarceration is not, itself, willful misconduct." *Miller*, 131 A.3d at 113-14 (citations omitted). In this case, Claimant immediately informed Employer of his incarceration and his text messages explained that he would be unable to return to work unless he could make bail; there was no work rule that he had to report every day he was absent; even if there was, he could not have done so because he did not have a prepaid jail telephone account; and he was never convicted of any crime in relation to his arrest. Accordingly, "[w]hile we have no issue with the employer's right to

9

enforce minimum attendance standards, [like the Board] we find no basis for holding that the claimant's breach of those standards was willful or wanton." *Miller*, 131 A.3d at 114 (quoting *Hawkins*, 472 A.2d at 1192-93). The order of the Board is affirmed.

DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K-Brooke Enterprises d/b/a Barberry : 
Farm, :
                    Petitioner : 
                              :
        v.                    : No. 208 C.D. 2017
                              :
Unemployment Compensation Board : 
of Review, :
                    Respondent : 

# **O R D E R**

AND NOW, this 15th day of November, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge